[L. A. No. 966. Department One.—April 11, 1902.]

## DELIA W. CHASE, Respondent, v. CONRAD SCHEERER, and W. A. HARTWELL, as City Treasurer of City of Los Angeles, Appellants.

QUIETING TITLE—VOID SALE UNDER STREET ASSESSMENT—INVALID CONTRACT—DELEGATION OF POWER.—An action will lie to quiet title to a city lot, the sale of which is void, as having been made under a void assessment for street work, the contract for which unlawfully delegated power to the superintendent of streets greatly to increase or lessen the expense of the work, and was thereby rendered invalid.

POWER OF CITY COUNCIL—DELEGATION OF POWER TO SUPERINTENDENT OF STREETS.—The city council has the right to require the superintendent of streets to examine the work, to determine if it complies with the contract, and if the material is such as is called for in the contract, and to see that the details are carried out; but it cannot delegate authority to that officer that should be exercised by the city council to determine the amount of the allowance that should be made or to increase or diminish the cost of the work.

APPEAL from a judgment of the Superior Court of the County of Los Angeles. Waldo M. York, Judge.

The facts are stated in the opinion.

Jones & Weller, for Appellants.

C. W. Chase, for Respondent.

COOPER, C.—This action was brought to quiet plaintiff's title to the premises described in the complaint, being in the city of Los Angeles, and to have the claim of defendant Scheerer declared to be unjust, and the certificate of sale issued to him declared void. The complaint sets forth fully and in detail the proceedings in regard to an assessment, claimed to have been levied upon plaintiff's said lot for the improvement of Lopez Street, the various steps leading up to said assessment, the issuance of a bond, and a sale by defendant Hartwell as city treasurer to defendant Scheerer on the fifth day of August, 1898, and the issuance of a certificate of sale to said Scheerer. The defendants demurred to the complaint upon the ground that it does not state facts suf-

ficient to constitute a cause of action. Their demurrer was overruled, and they declined to answer. Judgment was accordingly entered for plaintiff as prayed. This appeal is from the judgment, and the sole question is as to whether or not the complaint states a cause of action. Does it appear from the complaint that the contract and proceedings for grading Lopez Street were defective in so material a matter as to render the assessment upon plaintiff's lot void? It is provided in the "Vrooman Act" (Stats. 1885, p. 147 et seq.) that "whenever the public interest or convenience may require, the city council is hereby authorized and empowered to order the whole or any portion of the street . . . graded or regraded to the official grade, . . . and to order sidewalks, sewers, manholes, culverts, curbing, and cross-walks to be constructed therein, and to order any other work to be done which shall be necessary to make and complete the whole or any portion of said streets. . . ."

The authority to let contracts for grading and improving the public streets is, by the express provisions of the said act, vested in the city council. The legislature has vested the power to make contracts for grading and otherwise improving the public streets in a body chosen by the voters of the municipality. Such power is in the nature of a public trust, for the public benefit, and cannot be vicariously exercised. The city council is the governing body of the corporation, and by it the discretion of the municipality is properly exercised. It cannot shift the responsibility so given to it by delegating its powers to others. The above propositions are elementary. (1 Beach on Public Corporations, sec. 276; Tiedeman on Municipal Corporations, sec. 113; 1 Dillon on Municipal Corporations, 4th ed., sec. 96.) It is said by the latter author: "Thus where, by charter or statute, local improvements, to be assessed upon the adjacent property-owners, are to be constructed in 'such manner as the common council shall prescribe' by ordinance, it is not competent for the council to pass an ordinance delegating or leaving to any officer or committee of the corporation the power to determine the mode, manner, or plan of the improvement. Such an ordinance is void, since powers of this kind must, as above shown, be exercised in strict conformity with the charter or incorporating act."

In the complaint it is alleged that the contract contains the

following provisions: "The contractor shall not use any material in filling the sub-grade that is of a spongy nature, and should the street, or any portion thereof, be found to contain material unsuited for foundation purposes, the contractor shall remove such material at his expense, and replace with good earth or gravel. Fills exceeding five feet shall consist of good, wholesome earth, which shall be deposited in layers not exceeding one foot in thickness, each layer to be moistened and well packed separately. An allowance for settling, to be determined by the street superintendent, shall be made when finishing the fill. . . . Unless otherwise directed by the street superintendent, the crown of the street shall be made to conform with the cross-section on file with the city clerk. . . . The crown and sidewalks shall conform to the above-mentioned cross-section. Should the superintendent deem it necessary to change the above described form of cross-section of street at any place thereof, the contractor shall comply to such change without receiving extra pay therefor."

Under the decisions of this court the above allegation clearly shows a delegation of authority to the street superintendent which renders the assessment void. The council had the right to require the superintendent of streets to examine the work, to determine if it complied with the contract, to determine if the material was such as was called for in the contract, and to see that the details were carried out. But the provision giving to the superintendent the authority to determine the amount of the allowance that should be made for "settling" when finishing the fills, was a delegation of authority to that officer that should have been exercised by the city council. So, too, the provisions by which the superintendent is authorized to change the form of the cross-section of the street at any place thereof at his pleasure, and then require the contractor to make the crown of the street to conform to such change, give to him the power to increase or diminish the cost of the work as he may desire.

It is evident to any one reading the portions of the contract above quoted that the power to do or not to do many things, and the power to greatly increase or lessen the expense of the grading, is delegated to the superintendent of streets. The contract is subject to many criticisms pointed

out in *Bolton* v. *Gilleran,* 105 Cal. 252.[1] Upon the authority of that case the assessment must be held to be void.

This case is almost precisely like *Stansbury* v. *White,* 121 Cal. 435, and *Chase* v. *Treasurer of Los Angeles et al.,* 122 Cal. 541. The portions of the contract above quoted are precisely the same as in specification No. 5, referred to in the contract in each of the above cases, and must have been the result of using the same blank form of contract. In the first case this court said: "The superintendent may decide, in case he wishes to favor a contractor, that the sub-grade contains no 'material unsuited for foundation purposes' which need be removed; that a 'small allowance for settling' is enough; that the crown of the street as constructed conforms 'with the cross-section on file,' and no change is necessary; that no culverts are needed. . . . Under such specifications it is evident that no one could intelligently bid for the contract, as he could not tell in advance what would be the exact character or extent of the work to be done, or the necessary expense of doing it. Any bidder would therefore hesitate to take such a contract to do the work, unless his bid was placed at a high figure, or he felt sure he would be favored by the superintendent."

In *Chase* v. *Treasurer of Los Angeles et al.,* 122 Cal. 541, referring to the specifications which the record shows to be almost exactly identical with the specifications here, the court said the contract delegated duties which the council alone could perform.

It has been held by this court that no valid assessment could be made under a contract that provided that the contractor shall "put in such extra concrete as the superintendent of streets and the city engineer may require, and in such places and in such form as they may designate," (*Perine Contract etc. Co.* v. *Pasadena,* 116 Cal. 8,) or where the contract provided that the improvement should be of "granite or artificial stone," (*San José Imp. Co.* v. *Auzerais,* 106 Cal. 499,) or where the contract was for making improvement "where necessary," (*Richardson* v. *Heydenfeldt,* 46 Cal. 68,) or where the contract provided that the rock to be used on the surface of the roadway "shall be of such size as to pass through a one-inch mesh, a smaller percentage of fine material

---

[1] 45 Am. St. Rep. 33.

consequent upon the crushing of the rock being allowable, the amount of the same to be governed·by the superintendent of streets,'' (*California Imp. Co.* v. *Reynolds,* 123 Cal. 92,) or where the specification was ''suitable drains and inlets are to be constructed at all intersecting street crossings,'' (*Fay* v. *Reed,* 128 Cal. 359,) or where the materials out of which culverts and curbing were to be constructed were not named in the resolution, (*Schwiesau* v. *Mahon,* 128 Cal. 114.) And so are the authorities in other jurisdictions. (*Thompson* v. *Schermerhorn,* 6 N. Y. 95;[1] *Birdsall* v. *Clark,* 73 N. Y. 73;[2] *Phelps* v. *Mayor etc.,* 112 N. Y. 219; *Foss* v. *Chicago,* 56 Ill. 354; *Bryan* v. *Chicago,* 60 Ill. 507; *Village of Hyde Park* v. *Carton,* 132 Ill. 103; *City of St. Louis* v. *Clemens,* 43 Mo. 395.)

It is earnestly claimed that the doctrine of the California cases herein cited has been overthrown by the late case of *Haughawout* v. *Hubbard,* 131 Cal. 676, but we do not think so. That case ''applied the principle to the functions of the city council'' where the contract provided that the contractor shall excavate ''the trench to such increased depth as the street superintendent may decide to be necessary.'' Under the law it was the duty of the street superintendent to make plans, estimates, and specifications as to the sewer. It would be practically impossible for the city council to burrow into the ground, all along the line of the contemplated sewer, to see if the ground formed a sufficient foundation for the trench of the sewer. In the opinion *Bolton* v. *Gilleran* is cited with approval, and is expressly stated not to be in conflict with the opinion rendered. It becomes unnecessary to examine the many other objections raised to the assessment. (See, also, *Grant* v. *Barber,* 135 Cal. 188.)

For the reasons given the attempted assessment is void, and the judgment should be affirmed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the attempted assessment is void and the judgment is affirmed.

                    Garoutte, J., Van Dyke, J., Harrison, J.

---

[1] 55 Am. Dec. 385.        [2] 29 Am. Rep. 105.